IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL FEDERATION OF INDEPENDENT BUSINESS ) ) ) Plaintiff, ) ) v. ) ) THE ARCHITECTURAL AND ) TRANSPORTATION BARRIERS ) COMPLIANCE BOARD ) a/k/a/ ACCESS BOARD, et al ) ) Defendants. ) ) | Case Number: 1:05CV01329 Hon. Paul L. Friedman |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants the Architectural and Transportation Barriers Compliance Board and its Chair, Jan Tuck, respectfully move this Court to dismiss this action for lack of subject matter jurisdiction. The grounds for this motion are set forth in the attached memorandum.

Dated: September 27, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_____/s/_____
STUART A. LICHT (NY Bar)
MARSHA S. EDNEY D.C. Bar # 414271
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Ave, N.W., Room 7148
Washington, D.C. 20530
(202) 514-4520

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL FEDERATION OF INDEPENDENT BUSINESS | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number: 1:05CV01329 |
| THE ARCHITECTURAL AND TRANSPORTATION BARRIERS COMPLIANCE BOARD a/k/a/ ACCESS BOARD, et al | ) ) ) ) ) | Hon. Paul L. Friedman |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Defendants, the Architectural and Transportation Barriers Compliance Board and its Chair, Jan Tuck, submit this memorandum in support of their motion to dismiss plaintiff's Complaint For Declaratory and Injunctive Relief ("Pl. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff, the National Federation of Independent Business ("NFIB"), seeks an order requiring defendants to rescind revised minimum architectural guidelines for the new construction and alteration of facilities covered by the Americans with Disabilities Act. NFIB alleges that defendants failed to consider the significant economic impact the revised guidelines will have on a substantial number of small businesses in violation of the Regulatory Flexibility Act. The revised guidelines serve as the baseline for standards that will eventually be revised and incorporated into regulations by the Department of Justice. Entities subject to the Americans

with Disabilities Act must comply with the Department of Justice's standards, and not defendants' revised guidelines.

Because plaintiff's action is patently premature, it must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]  On its face, plaintiff's complaint challenges revised guidelines that are not directly enforceable against plaintiff's members.  Rather, these guidelines merely serve as a baseline for standards that will be established by the Department of Justice.  The Department of Justice, however, has not yet revised its standards and incorporated the revised standards into regulations.  Thus, the extent to which plaintiff's members may have to comply with standards yet to be revised by the Department of Justice is unknown.  Relief for a future, hypothetical injury would be improper under fundamental justiciability doctrines of ripeness and standing.   Therefore, this action must be dismissed.

## LEGAL AND REGULATORY BACKGROUND

A.   Regulatory Flexibility Act

The Regulatory Flexibility Act ("RFA") requires agencies to consider the effect that their regulations will have on small entities, analyze effective alternatives that minimize entity

---

[1] Because judicial review of this action is premature, defendants do not at this time address the merits of plaintiff's claims.  Defendants, however, preserve their defense that plaintiff has failed to state a claim upon which relief can be granted and reserve the right to defend against the merits of plaintiff's claims, if necessary, at a later and more appropriate juncture.  See Fed. R. Civ. P. 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."); see also Stock 'In S.A. v. Swissco, Inc., 748 F. Supp. 23, 27 (D.D.C. 1990) (a motion asserting a defense of failure to state a claim upon which relief can be granted "may be considered by the Court at any time before trial").

impacts, and make their analyses available for public comment. 5 U.S.C. §601 et. seq. The RFA applies to a wide range of small entities including small businesses and not-for-profit organizations. The RFA was amended in 1996 by the Small Business Regulatory Enforcement Fairness Act which provided for judicial review for some of the RFA's provisions and required more detailed and substantive regulatory flexibility analyses. See Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121. When applicable, the RFA, as amended, requires an agency to make available for public comment an initial regulatory flexibility analysis describing a proposed rule's effect on small businesses, 5 U.S.C. § 603(a), and discussing significant alternatives that could accomplish the same objectives while reducing any significant economic impact on small businesses, id. § 603(c). The final regulatory flexibility analysis must describe steps taken to minimize that impact and must explain why it rejected "other significant alternatives" proposed by commenters. Id. § 604(a)(5). The RFA is a procedural, rather than substantive, agency mandate. See Environmental Defense Center v. EPA, 344 F.3d 832, 879 (9th Cir. 2003)("the analyses required by the RFA are essentially procedural hurdles; after considering the relevant impacts and alternatives, an administrative agency remains free to regulate as it sees fit"); Associated Fisheries, Inc. v. Daley, 127 F.3d 104, 114 (1st Cir.1997) ("section 604 does not command an agency to take specific substantive measures, but, rather, only to give explicit consideration to less onerous options"). These requirements do not apply, however, where the head of the agency certifies that the regulation will not have a significant economic impact on a substantial number of small entities. See 5 U.S.C. § 605(b). This certification must contain a statement containing the factual basis for the certification. Id.

B.    The American with Disabilities Act

On July 26, 1990, President George H.W. Bush signed into law the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., a comprehensive civil rights law prohibiting discrimination on the basis of disability.  The ADA broadly protects the rights of individuals with disabilities in employment, access to state and local government services, places of public accommodation, and transportation.  The ADA was premised in part by the Congressional finding that "individuals with disabilities continually encounter various forms of discrimination, including . . . the discriminatory effects of architectural, transportation, and communication barriers." Id. at § 12101(a)(5).

To combat this discrimination, Congress mandated that all commercial facilities and "public accommodations" designed and constructed for first occupancy after January 26, 1993, be "readily accessible to and usable by individuals with disabilities . . . in accordance with standards set forth or incorporated by reference in regulations" issued pursuant to the Act.[2]  Id. at § 12183(a)(1).  Congress also required altered portions of facilities to be accessible to individuals with disabilities to the maximum extent feasible.  Id. at § 12183 (a)(2).

The Department of Justice ("DOJ" or "Department"), through the Attorney General, was specifically designated by Congress as the agency authorized to issue regulations to carry out the requirements of the ADA.  See 42 U.S.C. § 12186(b).  The ADA specifies that the DOJ regulations shall incorporate standards for commercial facilities and public accommodations, id.

---

[2]  "Public accommodations" are defined as businesses that are generally open to the public and that fall into one of twelve categories listed in the ADA, such as restaurants, movie theaters, schools, day care facilities, recreation facilities, and doctors' offices.  See 42 U.S.C. §§ 12181(7)(A)-(L).

at §12186(b), and further specifies that such standards shall be consistent with guidelines issued by another federal agency, the Architectural and Transportation Barriers Compliance Board (commonly referred to as the "Access Board") id. at §12186© .

     The Access Board was established by section 502 of the Rehabilitation Act, 29 U.S.C. § 792.  The Board consists of thirteen public members appointed by the President, of whom a majority must be individuals with disabilities, and twelve Federal agencies designated by law, including DOJ.  The Access Board is responsible for establishing minimum guidelines to ensure that facilities covered by the ADA are accessible, in terms of architecture, design, and communication, to individuals with disabilities.[3]  42 U.S.C. §12204.  The guidelines issued by the Access Board are known as the ADA Accessibility Guidelines ("ADAAG"), and address the new construction and alteration of facilities.  See 36 C.F.R. Part 1191  As noted above, the Access Board's guidelines serve as the baseline for DOJ's standards. The Access Board's guidelines are not directly enforceable against entities subject to the ADA; entities are only required to comply with the DOJ's standards.  See, e.g. 28 C.F.R. § 36.406 and 36 C.F.R. § 1191.1.

     C.     Rulemaking Background

     On July 26, 1991, the Access Board initially published ADAAG.  56 Fed. Reg. 35,408. The Department was extensively involved in the development of ADAAG, and as a Federal member of the Access Board, the Department voted to approve the initial guidelines.  On the same day, the Department issued its final rules implementing the ADA – after notice and

---

     [3] The Access Board is also responsible for establishing guidelines pursuant to the Architectural Barriers Act ("ABA"), 42  U.S.C. § 4151 et. seq., which requires federal facilities be accessible to persons with disabilities.  The ABA guidelines are not at issue in this case.

comment rulemaking – which incorporated ADAAG as DOJ standards.  See 56 Fed. Reg. 35,544 (July 26, 1991)(codified at 28 C.F.R. Part 36 Appendix A).  Under the Department's regulation implementing Title III of the ADA, newly constructed and altered places of public accommodation and commercial facilities are required to comply with DOJ's standards.  28 C.F.R. § 36.406.

In 1994, the Access Board began the process of updating ADAAG by establishing an advisory committee comprised of members of the design and construction industry, the building code community, state and local government entities, and people with disabilities.  59 Fed. Reg. 47165 (September 14, 1994).  In 1999, based largely on the report and recommendations of this advisory committee, the Access Board issued a proposed rule to update and revise ADAAG.  64 Fed. Reg. 62,248 (November 19, 1994).  In its publication of the proposed rule, the Access Board, certified pursuant to the RFA, 5 U.S.C. § 605(b), that the revised guidelines would not have a significant economic impact on a substantial number of small entities.  64 Fed. Reg. at 62,284.  This certification was based on a regulatory assessment that the Access Board had prepared for the proposed rule in accordance with Executive Order 12866.[4]  Id.

In response to the proposed rule, the Access Board received more than 2,500 comments from individuals with disabilities, affected industries, state and local governments, and others.  69 Fed. Reg. 44,083, 44,085.  The Access Board provided further opportunity for participation by holding public hearings throughout the nation.  Id.  The Access Board also worked to harmonize

---

[4] Executive Order 12866 requires agencies to assess the costs and benefits of proposed regulations prior to issuing such regulations and specifically states that "each agency shall tailor its regulations to impose the least burden on society, including individuals, businesses of differing sizes and other entities, . . . taking into account, among other things, . . . the costs of cumulative regulations."  Executive Order 12866 § 1(b)(11).

revisions to ADAAG with industry standards and model codes which form the basis for many state and local building codes and even released an interim draft of its guidelines to the public in April 2002, in order to provide an opportunity for model codes to consider amendments that would promote further harmonization. 67 Fed. Reg 15,509 (April 2, 2002). On July 23, 2004, the Access Board published the revised ADAAG as a final rule. See 69 Fed. Reg. 44,083. In its publication of the final rule, the Access Board again certified pursuant to the RFA, 5 U.S.C. 605(b), that the revised guidelines would not have a significant economic impact on a substantial number of small entities. 64 Fed. Reg. at 62,284. This certification was based on another regulatory assessment that the Access Board had prepared for the final rule in accordance with Executive Order 12866. Id. See http://www.access-board.gov/ada-aba/reg-assess.htm. As explained earlier, the revised guidelines are not directly enforceable against entities subject to the ADA.

In September, 2004, following publication of the Access Board's revised guidelines, the Department issued an Advanced Notice of Proposed Rulemaking ("ANPRM") to begin the process of publishing a proposed rule that will revise DOJ's standards consistent with the amendments to ADAAG since 1998.[5] 69 Fed. Reg. 58,768 (2004). The Department is currently reviewing the comments it received in response to the ANPRM, including comments submitted by plaintiff, and has not yet issued a proposed rule nor completed its regulatory assessment under

---

[5] Since 1998, the Access Board has amended the ADAAG four times, adding specific guidelines in the following areas: State and local government facilities (63 Fed. Reg. 2,000, Jan. 13, 1998); building elements designed for use by children (63 Fed. Reg. 2,060, Jan. 13, 1998); play areas (65 Fed. Reg. 62,497, Oct. 18, 2000); and recreation facilities (67 Fed. Reg. 56,352, Sept. 3, 2002). DOJ had not previously revised its standards based on these amendments to ADAAG.

the RFA. Although a regulatory assessment was not required for the ANPRM, DOJ requested comments on the proposed methodology for the regulatory assessment it will prepare in connection with the proposed rule. Id. at 58,778. In the ANPRM, DOJ has indicated that as part of its regulatory assessment it expects to adopt the regulatory assessment prepared by the Access Board for its final rule, but also recognizes that the Department's regulatory assessment must be broader because it must take into account earlier amendments to ADAAG and also any revised regulations regarding barrier removal in existing facilities.[6] Id. DOJ further recognizes that to comply with the RFA, the Department must consider the impact of its proposed rule on small entities, and that if the proposed rule is likely to have a significant economic impact on a substantial number of small entities, the Department will prepare an initial regulatory flexibility analysis. Id. at 58,778-79.

## STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). Although the plaintiff is entitled to all reasonable factual inferences that can be drawn in his favor, see Artis v. Greenspan, 158 F.3d 1301, 1306 (D.C. Cir. 1998), a Rule

---

[6] In addition to incorporating standards for newly constructed and altered facilities, the ADA also requires the Department's regulations to implement provisions of the statute that require structural barriers in existing facilities to be removed where it is "readily achievable." 42 U.S.C. § 12182(b)(2)(a)(iv). The Access Board has no authority regarding barrier removal in existing facilities. See 69 Fed. Reg. 44,083, 44,086, 44,156. DOJ has complete discretion regarding regulations governing barrier removal in existing facilities. Thus, any concerns plaintiff may have on the impact of the revised guidelines on barrier removal in existing facilities cannot be addressed by this lawsuit.

12(b)(1) motion "imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). [7]

## ARGUMENT

I.   PLAINTIFF'S CLAIMS ARE NON-JUSTICIABLE

Article III of the Constitution limits the role of federal courts to the resolution of cases and controversies. U.S. Const. art. III, § 2. Fundamental justiciability doctrines, including ripeness and standing, are derived from this case-or-controversy requirement. See Allen v. Wright, 468 U.S. 737, 750 (1984); Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996). For the reasons explained in detail below, plaintiff cannot establish either ripeness or standing. Accordingly, the Court lacks subject matter jurisdiction over plaintiff's claims, and the complaint must be dismissed pursuant to Rule 12(b)(1).

   A.   Plaintiff's Claims Are Not Ripe

An Article III court cannot entertain the claims of a litigant unless they satisfy both constitutional and prudential ripeness requirements. See Wyoming Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 48 (D.C. Cir. 1999). Those requirements seek to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

---

[7] In deciding a Rule 12(b)(1) motion, a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. Alliance for Democracy v. FEC, 362 F. Supp. 2d 138, 142 (D.D.C. 2005); accord Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 n.3 (D.C. Cir. 1997). By considering documents outside the pleadings, a court does not convert a motion to dismiss pursuant to Rule 12(b)(1) into one for summary judgment. Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967).

Under the Constitution, a claim is not ripe for adjudication unless there is an "injury in fact" that is "certainly impending." Nat'l Treasury Employees Union, 101 F.3d at 1427. "Allegations of possible future injury do not satisfy the requirements of Art. III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990); see also Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks omitted).

The ripeness doctrine also dictates that courts "go beyond constitutional minima and take into account prudential concerns which in some cases may mandate dismissal even if there is not a constitutional bar to the exercise of . . . jurisdiction." Wyoming Outdoor Council, 165 F.3d at 48. Under the prudential inquiry, a court must consider "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." Id. (quoting Abbott Labs., 387 U.S. at 149). The ripeness analysis is particularly important in cases, like this one, in which injunctive relief is sought. As the Supreme Court noted in Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57 (1993):

> injunctive and declaratory judgment remedies...are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy ripe for judicial resolution, that is to say, unless the effects of the administrative action challenged have been felt in a concrete way by the challenging parties.

Id. at 57 (internal citations omitted).

Plaintiff cannot satisfy either the constitutional or prudential ripeness requirements. As for the constitutional requirement, plaintiff has not suffered an injury in fact that is "certainly impending." Nat'l Treasury Employees Union, 101 F.3d at 1427. Plaintiff is challenging the revised guidelines published by the Access Board on behalf of its member small businesses. Pl. Compl. ¶ 2. Specifically, plaintiff alleges that the Access Board violated the RFA by failing to conduct a regulatory flexibility analysis and instead certifying, pursuant to §605(b) of the RFA, that the revised guidelines will not have a significant economic impact on the new construction and alterations of facilities by a substantial number of small entities. Pl. Compl. ¶¶ 27, 34-35. Plaintiff's Complaint, however, fails to set forth any specific injury resulting from this alleged violation and, as explained below, any injury is entirely speculative.

Plaintiff's members suffer no immediate injury from either the Access Board's issuance of the revised guidelines nor from its section 605(b) certification because, as explained above, the Access Board's guidelines are not directly enforceable; plaintiff's members are only required to comply with DOJ's standards and the DOJ standards currently in effect are the standards initially issued by the Department in 1991. 54 Fed. Reg. 35,544, 35.605 (July 19, 1991), codified at 28 C.F.R. Part 36, Appendix A. To date, DOJ has only issued an ANPRM to revise its standards, and has not yet issued a proposed rule, much less a final rule. Therefore, plaintiff's members must currently comply with DOJ's standards, as issued in 1991, and not the Access Board's revised guidelines. Plaintiff's Complaint even recognizes this fact. See Pl. Compl. at ¶22 ("All public accommodations – including those that are small entities – will have to comply with the Revised ADA Guidelines **when** the DOJ incorporates them into its regulations.) emphasis added); id. at ¶ 24 ("the types of public accommodations that will be required to

comply with the Revised ADA Guidelines **once** they are incorporated into the DOJ regulations include . . . ."). (emphasis added) Thus, it is clear from the face of Plaintiff's Complaint that plaintiff's "injury" is not "certainly impending."

Moreover, DOJ has stated its intent to conduct an analysis under the RFA before revising its standards. 69 Fed. Reg. at 58778-79. Thus, plaintiff's concern – that the impact the revised guidelines will have on its members was not properly evaluated – will be addressed by the Department, which will conduct its own regulatory flexibility analysis pursuant to the RFA, prior to incorporating any revised standards into regulations. And, while DOJ's standards are required to be "consistent" with the Access Board's revised guidelines, the Department has discretion as to exactly how and to what extent its revised standards will apply to plaintiff's members. See generally 69 Fed. Reg. at 58,770-58,777. Given the fact that there are still ongoing rulemaking proceedings which may affect exactly how any revised standards issued by DOJ will apply to plaintiff's members, plaintiff's Complaint must be dismissed as constitutionally premature.

Prudential ripeness concerns also mandate dismissal of this case. First, this case is not fit for judicial decision. See Abbott Labs, 387 U.S. at 149. Fitness turns on "whether the agency's position is merely tentative or, on the other hand, whether the agency views its deliberative process sufficiently complete to command compliance with its announced position." Ciba-Geigy Corp. v. EPA, 801 F.2d 430, 436 (D.C. Cir. 1986). Even if the agency's position is final, "the court has an independent interest in postponing review until the agency's decision has actually been applied to the party seeking review, so that the issues are clearly presented in a fully developed factual context." Consolidated Coal Co. v. Federal Mine Safety & Health Review Comm'n, 824 F.2d 1071, 1080 (D.C. Cir. 1987); see also Alascom, Inc. v. FCC, 727 F.2d 1212,

1217 (D.C. Cir. 1984) (even if the agency's position is final, it remains unfit for review unless it presents a <u>purely</u> legal issue "in which no further facts need be developed to facilitate proper judicial decision.").

As already discussed, although the Access Board has issued a final rule revising its guidelines, the guidelines are not directly enforceable. The guidelines merely serve as a baseline for the revised standards that will be established by DOJ and the Department has yet to revise its standards. According to the DOJ's ANPRM, there are a number of issues the Department is considering prior to revising its standards. For example, DOJ has indicated that it is considering delaying the effective date of the revised standards for new construction and alterations, 69 Fed. Reg. at 58,770, and providing a safe harbor for barrier removal in existing facilities. <u>Id</u>. at 58,771-72. Importantly, DOJ will be conducting its own regulatory analysis pursuant to the RFA. Until DOJ issues regulations incorporating revised standards, it is not exactly clear how plaintiff's members will be affected. Under these circumstances, because the Court would benefit from waiting for further development of the factual issues, the case is not currently fit for judicial decision. <u>Nat'l Treasury Employees Union</u>, 101 F.3d at 1431.

Second, plaintiff will not suffer "any immediate and direct injury" as the result of the Court's refusal to entertain plaintiff's complaint at this time. <u>Lake Pilots Ass'n v. United States Coast Guard</u>, 257 F. Supp. 2d 148, 162 (D.D.C. 2003); <u>see</u> <u>also</u> <u>State Farm Mutual Auto Ins. Co. v. Dole</u>, 802 F.2d 474, 480 (D.C. Cir. 1986) (hardship must be "immediate, direct, and significant" to outweigh interest in postponing review). Plaintiff's Complaint does not allege any irremediable adverse consequences that would result from awaiting DOJ to conduct its own regulatory flexibility analysis under the RFA – an analysis which will occur before DOJ issues

regulations incorporating revised standards. In fact, it is entirely possible that some or all of plaintiff's concerns will be resolved as a result of DOJ's rulemaking.

  B. <u>Plaintiff Lacks Standing</u>

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). The Supreme Court has held that the "irreducible constitutional minimum of standing contains three elements." <u>Id</u>. First, the plaintiff must have suffered an "injury-in-fact"—an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Id</u>. Second, there must be a "causal connection between the injury and the conduct complained of." <u>Id</u>. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." 504 U.S. at 561. The burden of establishing these indispensable elements lies with the party invoking federal jurisdiction. <u>Id</u>.; <u>Alliance for Democracy</u>, 362 F. Supp. 2d 138, 143 (D.D.C. 2005). Among other functions, the standing requirements assure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 472 (1982).

Plaintiff's case cannot survive the first standing requirement, which is essentially the same as the constitutional ripeness requirement. <u>See</u> <u>Nat'l Treasury Employees Union</u>, 101 F.3d at 1427 (ripeness and standing share the constitutional requirement "than an injury in fact be certainly impending"). As explained above, plaintiff has suffered no injury that is concrete, particularized, actual, or imminent, because the revised guidelines issued by the Access Board

are not directly enforceable against entities subject to the ADA – and to date, DOJ has only issued an ANPRM to start the process of revising its standards. Moreover, until DOJ revises its standards, the extent to which plaintiff's members will be affected is unknown. Thus, plaintiff's members' injury in this action is hypothetical. Moreover, without an actual injury, the causal connection required under the standing analysis cannot exist, and there is nothing for the Court to redress.

Although the complaint states that Plaintiff NFIB it is suing on behalf of its members, Pl. Compl. at ¶ 3, it also alleges injury to its own activities. Id. at ¶ 26. To satisfy the injury in fact requirement, "an organization suing on its own behalf must demonstrate that it has suffered concrete and demonstrable injury to its activities." Nat'l Treasury Employees' Union, 101 F.3d at 1427 (internal quotation marks and citations omitted). The injury must be concrete, and cannot be "conjectural or hypothetical, remote, speculative, or abstract." Id. (internal citations omitted).

Plaintiff NFIB fails to carry its burden of establishing the existence of an injury in fact. Plaintiff alleges that the Access Board's failure to conduct a regulatory flexibility analysis has caused it to divert resources to challenge defendant's unlawful acts and that these resources could have been used for other endeavors. Pl. Compl. ¶ 26. A drain on an organization's resources to advocate its policy preferences does not constitute injury in fact. See Nat'l Treasury Employees' Union, 101 F.3d at 1427. ("[C]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing."). Otherwise, every advocacy group would be able to claim standing to challenge any policy or regulation it opposed. See also Fair Housing Council v. Montgomery Newspapers, 141 F.3d 71, 80 (3d Cir. 1998)(holding that "pursuit of litigation alone cannot constitute an injury sufficient to establish standing under

-15-

Article III"); National Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1434 (D.C. Cir. 1995).

Here, plaintiff has not alleged that the Access Board's failure to conduct a regulatory flexibility analysis pursuant to the RFA directly impacts the conduct of their activities. According to the complaint, Plaintiff's organizational purpose is to protect small businesses from burdensome and costly government regulations. Pl. Compl. ¶ 3. At best, plaintiff is alleging a redirection of its advocacy efforts – an injury that is too speculative and remote to confer standing. Although the Access Board's section 605(b) certification may change the way plaintiff chooses to represent its members, defendant's conduct is not impairing their representation efforts and thus, they have failed to allege injury in fact. Nat'l Treasury Employees' Union, 101 F.3d at 1429. Plaintiff's alleged injury is easily distinguished from the line of cases recognizing organizational injury from an allegedly illegal action that increases the resources the group must devote to its programs independent of the suit challenging the action. See e.g., Spann v. Colonial Village, 899 F.2d 24, 27 (D.C. Cir.), cert. denied, 498 U.S. 980 (1990); Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). Because plaintiff cannot meet its burden of establishing standing on its own behalf, or on behalf of its members, this action must be dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

  For the foregoing reasons, this Court should grant defendants' motion to dismiss for lack of jurisdiction.

<div style="margin-left: 3em;">

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

_____/s/_____
STUART A. LICHT (NY Bar)
MARSHA S. EDNEY D.C. Bar # 414271
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Ave, N.W., Room 7148
Washington, D.C. 20530
(202) 514-4520

</div>